## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RAMIRO CANALES<br>   P.O. Box 49046<br>   Austin, Texas 78765<br><br>*Plaintiff*,<br><br>v.<br><br>DR. MIGUEL CARDONA, in his official<br>capacity as Secretary of Education<br>   400 Maryland Avenue, S.W.<br>   Washington, D.C. 20202<br><br>and<br><br>UNITED STATES DEPARTMENT OF<br>EDUCATION<br>   400 Maryland Avenue, S.W.<br>   Washington, D.C. 20202<br><br>*Defendants*. | Civil Action No. 1:22-cv-03251 |

## ORIGINAL COMPLAINT

"Dedicated public servants are the lifeblood of democracy. They do the hard work that is essential to our country's success – protecting us, teaching our children, keeping our streets clean and our lights on, and so much more."

- *President Joe Biden*

"Borrowers who devote a decade of their lives to public service should be able to rely on the promise of Public Service Loan Forgiveness. The system has not delivered on that promise to date, but that is about to change for many borrowers who have served their communities and their country."

- *Dr. Miguel Cardona*
  Secretary of Education
  October 6, 2021

## PRELIMINARY STATEMENT

Loan forgiveness for public servants should not be complicated.  Though well-intentioned, the limited Public Service Loan Forgiveness (PSLF) waiver announced by Defendant DR. MIGUEL CARDONA on October 6, 2021 has been life-changing for some but problematic for others.  Current and former employees of non-501(c)(3) non-profit organizations across the nation have experienced delay, confusion, and uncertainty.

Plaintiff, RAMIRO CANALES, earned the right to have his Direct Consolidation Loans forgiven after dedicating his life to the school children of Texas for more than a decade. Unfortunately, his application has inexplicably languished for almost 11 months behind a bureaucratic wall of silence.  Because of the uncertainty regarding whether the Texas Association of School Administrators (TASA), a 501(c)(6) non-profit organization and an affiliate of the American Association of School Administrators (AASA), is a "qualifying employer" that provides a public education service, Plaintiff had no choice but to file this complaint before the expiration of the October 31, 2022 waiver deadline.  After October 31st, Plaintiff will not receive PSLF credit for the approximate 120 loan payments he previously made on Federal Family Education Loans over a 10-year period while employed at TASA.  He will also not get PSLF credit for the periods his loans were in forbearance or deferment.

Plaintiff did not file this complaint lightly.  In fact, he asked The Almighty for guidance because litigating against the federal government is not easy.  Litigation is costly, time consuming, and mentally taxing.  Nevertheless, when the federal government does not honor its promise to all public servants who made sacrifices, a lawsuit is necessary to protect legal rights. Justitia Omnibus.

## NATURE OF THE ACTION

1. This is an action for declaratory and injunctive relief. Plaintiff brings this action based on Defendants' violation of the Administrative Procedures Act, 5 U.S.C. § 500 *et seq.* and the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

2. Prior to February 22, 2019, Defendant UNITED STATES DEPARTMENT OF EDUCATION used the "Primary Purpose" and "School-like Setting" standards it adopted to determine whether non-501(c)(3) non-profit organizations, such as TASA, provided a "qualifying service." On February 22, 2019, the Honorable Timothy J. Kelly concluded that the standards were unlawful and vacated them. *American Bar Association, et al. v. United States Department of Education, et al.*, 370 F.Supp. 3d 1, 27-31, 40 (D.D.C. 2019) ("Therefore, the Court will vacate the Primary Purpose and School-like Setting standards......").

3. After February 22, 2019, Defendant UNITED STATES DEPARTMENT OF EDUCATION adopted an "Unnamed" standard to apply to non-501(c)(3) non-profit organizations. The "Unnamed" standard was adopted in the dark.

4. Defendant DR. MIGUEL CARDONA announced the limited PSLF waiver on October 6, 2021. On December 16, 2021, Plaintiff submitted the Public Service Loan Forgiveness (PSLF) and Temporary Expanded PSLF (TEPSLF) Certification & Application to Fed Loan Servicing, the PSLF servicer, for TASA, a 501(c)(6) non-profit organization, and the Texas Association of Community Health Centers (TACHC), a 501(c)(3) non-profit organization. To assist Defendants with their review of TASA, Plaintiff included a two-page memo with 95 pages of attachments because the PSLF Help Tool indicated that TASA was "likely ineligible" as a "qualifying employer."

5. On March 25, 2022, Fed Loan Servicing sent Plaintiff a letter that stated the following: "We reviewed your Public Service Loan Forgiveness (PSLF) and Temporary Expanded PSLF (TEPSLF) Certification & Application (PSLF Form). Based on your employment and other information, we determined that you have eligible loans and your employment qualifies for PSLF."

6. On May 5, 2022, Fed Loan Servicing sent Plaintiff a "PSLF Application Results" letter. The letter stated: "We reviewed your Public Service Loan Forgiveness (PSLF) and Temporary Expanded PSLF (TEPSLF) Certification & Application (PSLF Form) you submitted and determined that you do not qualify for forgiveness at this time, as explained below:

**NOT ELIGIBLE YET**: You have not made the required 120 qualifying payments necessary to be eligible for PSLF. To qualify for PSLF, you must make 120 qualifying payments." TACHC was listed as the only "qualifying employer."

**Employment Information**

| Employer Name | Approved Employment Begin Date | Approved Employment End Date |
|---|---|---|
| TEXAS ASSOCIATION OF COMMUNITY HEALTH | 10/24/2019 | 11/30/2020 |

Note: This chart displays the periods of eligible employment approved to date. If the dates of employment that you submitted on the form differ from those listed above, it may be due to overlapping employment periods, dates certified into the future, or periods of employment on or before October 1, 2007 (which do not qualify for PSLF or TEPSLF). You may access your online account at MyFedLoan.org for specific details regarding your loans and payments.

7. The May 5, 2022 letter from Fed Loan Servicing was a final agency action. Defendants applied the "Unnamed" standard to determine that TASA is not a "qualifying employer" that provides a "qualifying service," i.e. public education. Defendants' decision had a practical and significant effect. Plaintiff will not receive PSLF credit for the approximate 120 loan payments he previously made on Federal Family Education Loans since October 2007. He will also not get PSLF credit for the periods his loans were in forbearance or deferment.

8. On May 9, 2022, out of an abundance of caution, Plaintiff filed a Public Service Loan Forgiveness (PSLF) Reconsideration Request with Federal Student Aid, an office of Defendant UNITED STATES DEPARTMENT OF EDUCATION, regarding TASA's eligibility as a "qualifying employer." The reconsideration request does not make the May 5, 2022 letter nonfinal. "[T]he mere possibility that an agency might reconsider in light of 'informal discussion' and invited contentions of inaccuracy does not suffice to make an otherwise final agency action nonfinal." *American Bar Association, et al.,* 370 F.Supp. 3d at 21.

9. On July 13, 2022, Defendant UNITED STATES DEPARTMENT OF EDUCATION published 133 pages of proposed rules in the Federal Register. 87 Fed. Reg. 41878-42010. The rules are effective July 1, 2023. Defendant proposed new definitions for the PSLF terms "public education service" and "non-governmental public service." A "public education service" is defined as the "provision of educational enrichment and/or support to students in a public school or school-like setting, including teaching." 87 Fed. Reg. 41932. Importantly, buried deep in the proposed rules (p. 41934), is a significant change:

> The Department is proposing one clarifying change from its continued approach of using the services provided by the organization to determination (sic) eligibility for PSLF. <u>In the past</u>, the Department considered an organization to be a qualifying employer for the purposes of PSLF if its <u>primary purpose</u> was to provide a qualifying service. The idea behind this concept was that an entire organization should not be designated as a qualifying employer if only a couple of its employees are providing a qualifying service because that demonstrates that the qualifying service is not in fact a core part of organization's work. However, the Department has found that determining an organization's primary purpose can be confusing and hard to apply. Therefore, the Department <u>proposes</u> to use a <u>more quantitative standard</u> for determining that an employer is providing a public service – that the <u>majority of an organization's full-time equivalent employees</u> must be providing a <u>qualifying service</u> for the organization to be a <u>qualifying employer</u> for PSLF. (emphasis added).

After July 1, 2023, TASA and other non-profits will <u>not</u> be "qualifying employers."

10. On September 22, 2022, Plaintiff received an email from Federal Student Aid regarding his reconsideration request. The message was clear: "At this time, we do not have an estimated completion time for your request."

11. Plaintiff seeks a declaration that the "Unnamed" standard Defendants use to determine if non-501(c)(3) non-profit organizations are a "qualifying employer" under the PSLF Program is unlawful. It was not adopted in accordance with the procedures specified in the Administrative Procedures Act. Plaintiff asks the Court to vacate the "Unnamed" standard because Defendants did not publish the standard in the Federal Register and their actions were arbitrary and capricious. Additionally, Plaintiff asks the Court to enjoin Defendants from using the "Unnamed" standard until a new standard is lawfully adopted.

**PARTIES**

12. Plaintiff RAMIRO CANALES is a former migrant farm worker from Santa Rosa, Texas, a small rural town in the Lower Rio Grande Valley. Santa Rosa is the home of the fighting Warriors. After graduating as salutatorian of the Class of 1987, he attended Texas' first university - Southwestern University in Georgetown, Texas. In 1991, he graduated with a Bachelor of Arts in International Studies. After graduating from Southwestern University, he attended the LBJ School of Public Affairs at The University of Texas at Austin. At the LBJ School, the late U.S. Representative Barbara Jordan supervised his academic research. In 1994, he graduated with a Master of Public Affairs degree. In 1995, he enrolled at The University of Texas School of Law. While at the law school, he served as the president of the Chicano/Hispanic Law Students Association (CHLSA). In 1998, he graduated with a Doctor of Jurisprudence degree. Plaintiff's proudest achievement is earning his bachelor's, master's, and juris doctor's degrees without owning a car.

Plaintiff is an attorney licensed in the State of Texas. He is admitted to practice before the following courts: U.S. Supreme Court, U.S Tax Court, U.S. Court of Appeals for the Fifth Circuit, U.S District Court for the District of Columbia, and the U.S. District Courts in the Southern, Western, and Eastern Districts of Texas.

Plaintiff has had a diverse career. He previously served as the Assistant Executive Director for Governmental Relations at TASA; as an Assistant Attorney General for Texas Attorneys General Greg Abbott and John Cornyn; as a staff attorney at TACHC; as a lecturer at The University of Texas at Austin; and as the chief of staff to the late Texas Representative Irma Rangel, the first Mexican-American woman elected to the Texas House of Representatives.

13. Defendant DR. MIGUEL CARDONA is the Secretary of Education. He has the authority to grant loan forgiveness. He announced the limited PSLF waiver on October 6, 2021.

14. Defendant UNITED STATES DEPARTMENT OF EDUCATION is a federal agency in the District of Columbia that is ultimately responsible for making "qualifying employer" determinations and applying the limited PSLF waiver changes.

## JURISDICTION AND VENUE

15. This Court has jurisdiction under 5 U.S.C. §§ 702 - 703, and 28 U.S.C. §§ 1331, 1361, and 2201.

16. Declaratory and injunctive relief is authorized by 5 U.S.C. §§ 702 - 706 and 28 U.S.C. §§ 2201-2202.

17. Venue is proper under 28 U.S.C. § 1391.

**FACTUAL ALLEGATIONS**

I. **PSLF Program**

18. The PSLF Program was created on September 27, 2007 as part of the College Cost Reduction and Access Act, Pub. L. No. 110-84, 121 Stat. 784. The specific reference to the program is found in Title IV (Loan Forgiveness), 121 Stat. 800-801. The statute only contains two definitions. One is for "eligible Federal Direct Loan." The other is for "public service job." A "public service job" is "a full-time job in......public education....." "Public education" is not defined. Beginning in October 2007, full-time employees in a public service job that make 120 Direct Loan payments in an approved payment plan over a 10-year period are eligible for loan forgiveness.

II. **PSLF Regulations**

19. On October 23, 2008, the PSLF regulations went into effect. *See* 34 CFR § 685.219 (Public Service Loan Forgiveness Program). The regulations were promulgated in accordance with the authority granted in 20 U.S.C. § 1087e(m). The regulations define certain terms. "*Employee* or *employed* means an individual who is hired and paid by a public service organization." 34 CFR § 685.219 (b). "*Full time*...means working in qualifying employment.....an annual average of at least 30 hours a week." *Id.* "*Public service organization*" means "......a private organization that provides the following public services:........public education.....and is not a business organized for profit, a labor union, or a political organization." *Id.* The term "public education" is not defined. Significantly, the regulations do not contain the standard of review for non-501(c)(3) non-profit organizations to determine if they are a "qualifying employer."

**III.     "Primary Purpose" and "School-like Setting" Standards**

20.     To determine whether a "public service organization" is a "qualifying employer" under the PSLF Program, Defendant UNITED STATES DEPARTMENT OF EDUCATION focuses on the services that an organization provides.  Prior to February 22, 2019, Defendant UNITED STATES DEPARTMENT OF EDUCATION applied the "Primary Purpose" and "School-like Setting" standards it adopted to non-501(c)(3) non-profit organizations such as TASA.   On February 22, 2019, the Honorable Timothy J. Kelly concluded that the "Primary Purpose" and "School-like Setting" standards violated the Administrative Procedures Act.  *American Bar Association, et al.,* 370 F.Supp. 3d at 27-31.  The Court vacated the "Primary Purpose" and "School-like Setting" standards because they were unlawful.  *Id.* at 40.

**IV.     The "Unnamed" Standard**

21.     After the "Primary Purpose" and "School-like settings" standards were vacated, Defendant UNITED STATES DEPARTMENT OF EDUCATION adopted an "Unnamed" standard to apply to non-501(c)(3) non-profit organizations.

22.     The "Unnamed" standard was adopted in the dark.

23.     The "Unnamed" standard was not published in the Federal Register.

24.     The "Unnamed" standard has been in effect since February 2019.

**V.      Limited PSLF Waiver**

25.     On October 6, 2021, Defendants announced an "overhaul of the Public Service Loan Forgiveness (PSLF) Program...to make the program live up to its promise."  *See* https://www.ed.gov/news/press-releases/us-department-education-announces-transformational-changes-public-service-loan-forgiveness-program-will-put-over-550000-public-service-workers-closer-loan-forgiveness (last visited October 25, 2022).

One of the key changes is that borrowers would receive credit for previous payments made on Federal Family Education Loans since October 2007. The payments would count toward the 120-payment requirement to receive loan forgiveness.

26. The limited PSLF waiver did not change the requirement that an employee work full time in qualifying employment for a public service organization.

27. Defendants published guidance documents and Frequently Asked Questions (FAQs) regarding the limited PSLF waiver at https://www.studentaid.gov/pslf.

28. The guidance documents and FAQs are not legally binding in a court of law.

29. On December 16, 2021, Plaintiff submitted the employment certification form and application for forgiveness to Fed Loan Servicing, the PSLF servicer, for the Texas Association of School Administrators (TASA) and the Texas Association of Community Health Centers (TACHC) to receive credit for previous loan payments.

## VI. Texas Association of School Administrators (TASA)

30. TASA is a private not-for-profit organization that is tax-exempt under 501(c)(6) of the Internal Revenue Code.

31. Article I and II of TASA's Constitution and Bylaws shows its affiliation and purpose:

> Article I:  Name
>
> The name of this corporation shall be the Texas Association of School Administrators.  The Association shall be a membership corporation, and is an affiliate of the American Association of School Administrators.
>
> Article II:  Purpose
>
> **Section 1.**  The purpose of this organization shall be to promote the progress of education in the State of Texas.  In pursuit of this objective, the Association will: (a) Establish and annually review a statement of the Association's Mission, Goals, and Objectives. (b) Cooperate with other organizations dedicated to such purpose.

>(c) Work for the improvement of instruction in the schools of the state. (d) Encourage the improvement of administrative practices in the schools of the state. (e) Provide means by which administrators may seek self-improvement by participating in the statewide study of problems in school administration. (f) Promote the involvement of all segments of the membership in the Association's programs and activities.
>
>**Section 2.**  The Association will work in close cooperation with the Texas Association of School Boards and American Association of School Administrators in all areas of common interest.

32. TASA provides public education services.

33. The PSLF Help Tool determined that TASA is not a "qualifying employer" and is "likely ineligible" to participate in the PSLF Program.

34. The American Association of School Administrators (AASA) is a not-for-profit organization that is tax-exempt under Section 501(c)(3) of the Internal Revenue Code.

35. The Mission Statement of AASA is clear: "AASA, The School Superintendents Association advocates for equitable access for all students to the highest quality public education, and develops and supports school leaders."

36. AASA provides public education services.

37. The PSLF Help Tool determined that AASA is a "qualifying employer" and "eligible" to participate in the PSLF Program.

38. AASA has affiliates in 49 states that provide public education services.

39. According to the PSLF Help Tool, only four AASA state affiliates are considered "qualifying employers" and "eligible" to participate in the PSLF Program.  The four state affiliates are the Arizona School Administrators, Inc., the Michigan Association of School Administrators, the West Virginia (WV) School Administrators, Inc., and the Wyoming Association of School Administrators.

40. Forty-five AASA state affiliates, including TASA, are not "qualifying employers" and are "likely ineligible" to participate in the PSLF Program.

41. The Texas Association of School Boards (TASB) is a not-for-profit organization that is tax-exempt under Section 501(c)(3) of the Internal Revenue Code.

42. TASB's Mission Statement is as follows: "The Texas Association of School Boards promotes educational excellence for Texas schoolchildren through advocacy, visionary leadership, and high school quality services to school districts."

43. TASB provides public education services.

44. The PSLF Help Tool determined that TASB is a "qualifying employer" and "eligible" to participate in the PSLF Program.

## VII. Texas Association of Community Health Centers (TACHC)

45. TACHC is a not-for-profit organization that is tax-exempt under Section 501(c)(3) of the Internal Revenue Code.

46. TACHC's Mission Statement is as follows: "TACHC will strengthen and support community health centers to speak with a unified voice and drive healthcare transformation by exemplifying innovation, access, and equity."

47. The PSLF Help Tool determined that TACHC is a "qualifying employer" and "eligible" to participate in the PSLF Program.

## VIII. PSLF Determination

48. On March 25, 2022, Fed Loan Servicing sent Plaintiff a letter that stated in pertinent part: "Based on your employment and other information, we determined that you have eligible loans and your employment qualifies for PSLF."

49. On May 5, 2022, Fed Loan Servicing sent Plaintiff a "PSLF Application Results" letter. The letter stated that Plaintiff "do[es] not qualify for forgiveness at this time, as explained below: **NOT ELIGIBLE YET**: You have not made the required 120 qualifying payments necessary to be eligible for PSLF. To qualify for PSLF, you must make 120 qualifying payments."

50. TACHC was listed as the only "qualifying employer."

51. Defendants used the "Unnamed" standard to determine that TASA is not a "qualifying employer."

52. Plaintiff did not receive any other letters or emails regarding TASA.

## IX. Reconsideration Request

53. The May 5, 2022 "PSLF Application Results" letter was a final agency action.

54. On May 9, 2022, Plaintiff filed a PSLF Reconsideration Request with Federal Student Aid, an office of Defendant UNITED STATES DEPARTMENT OF EDUCATION, regarding TASA's eligibility as a "qualifying employer."

55. On September 22, 2022, Federal Student Aid sent Plaintiff an email with the following message: "At this time, we do not have an estimated completion time for your request."

56. Plaintiff did not receive any other letters or emails regarding TASA.

## X. Transfer of Loans to MOHELA

57. On October 5, 2022, Plaintiff's Direct Consolidation Loans were transferred to the Missouri Higher Education Loan Authority (MOHELA).

58. MOHELA is the new PSLF servicer.

59. MOHELA has not sent Plaintiff any letters or emails regarding TASA.

## CAUSES OF ACTION

### COUNT ONE

### NO PUBLICATION IN THE FEDERAL REGISTER
### 5 U.S.C. § 552

60. Plaintiff repeats and incorporates by reference each and every averment contained in Paragraphs 1 through 59 of this complaint as if fully set forth herein.

61. The Administrative Procedures Act requires each agency to "separately state and currently publish in the Federal Register for the guidance of the public.....substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency and each amendment, revision, or repeal of the foregoing." 5 U.S.C. § 552(a)(1)(D) and (E).

62. The Administrative Procedures Act further provides that "[e]xcept to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published." 5 U.S.C. § 552(a)(1)(E).

63. The standard that Defendants apply to non-501(c)(3) non-profit organizations to determine if they are "qualifying employers" is a "matter required to be published in the Federal Register." *Id.* Defendants acknowledged that the standard requires publication when they proposed the new "quantitative standard" for non-501(c)(3) non-profit organizations in the rules published in the Federal Register on July 13, 2022. 87 Fed. Reg. 41934. *See supra* Paragraph 9.

64. The "Primary Purpose" and "School-like setting" standards that Defendant UNITED STATES DEPARTMENT OF EDUATION previously adopted were not published in the Federal Register. They were declared unlawful and vacated on February 22, 2019. *American Bar Association, et al.,* 370 F.Supp. 3d at 27-31, 40.

65. After February 22, 2019, Defendant UNITED STATES DEPARTMENT OF EDUCATION adopted an "Unnamed" standard to apply to non-501(c)(3) non-profit organizations. The "Unnamed" standard is "a matter required to be published in the Federal Register" and was "not so published." 5 U.S.C. § 552(a)(1)(E).

66. Plaintiff did not have "actual and timely notice" of the "Unnamed" standard. *Id*.

67. Plaintiff is not subject to the "Unnamed" standard.

## COUNT TWO

### ARBITRARY AND CAPRICIOUS AGENCY ACTION
### 5 U.S.C. § 706(2)

68. Plaintiff repeats and incorporates by reference each and every averment contained in Paragraphs 1 through 67 of this complaint as if fully set forth herein.

69. Under the Administrative Procedures Act, a reviewing court can "hold unlawful and set aside agency action....found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).

70. At a minimum, when an agency changes its course it must provide a reasoned explanation for the change, display awareness, and take into account serious reliance interests that will be affected. *American Bar Association, et al.,* 370 F.Supp. 3d at 32-33. Agency actions that do not meet the minimum requirements are "arbitrary and capricious and.....cannot carry the force of law." *Id.*

71. Defendants adopted the "Unnamed" standard in the dark.

72. Defendants did not satisfy the minimum requirements required by law.

73. Defendants' adoption of the "Unnamed" standard was arbitrary and capricious.

### COUNT THREE

### VIOLATION OF DUE PROCESS
### FIFTH AMENDMENT TO THE U.S. CONSTITUTION

74. Plaintiff repeats and incorporates by reference each and every averment contained in Paragraphs 1 through 73 of this complaint as if fully set forth herein.

75. The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides in pertinent part: "No person shall....be deprived of life, liberty, or property without due process of law."

76. At a minimum, due process requires fair notice and the opportunity to be heard.

77. Plaintiff's eligibility for forgiveness of his Direct Consolidation Loans is a property interest that is subject to due process.

78. Plaintiff did not receive timely and actual notice that Defendants were using an "Unnamed" standard to determine if TASA was a "qualifying employer."

79. Plaintiff did not receive any explanation why TASA is not a "qualifying employer."

80. Defendants' use of the "Unnamed" standard had a significant and practical effect.

81. After October 31, 2022, Plaintiff will not receive PSLF credit for the approximate 120 loan payments he previously made on Federal Family Education Loans over a 10-year period while employed at TASA. He will also not get PSLF credit for the periods his loans were in forbearance or deferment.

**<u>PRAYER</u>**

"Student loans were never meant to be a life sentence, but it's certainly felt that way for borrowers locked out of debt relief they're eligible for."

- *Dr. Miguel Cardona*
  Secretary of Education
  April 19, 2022

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that this Court:

1) Declare that Defendants did not comply with the Administrative Procedures Act when it adopted the "Unnamed" standard.

2) Declare that the "Unnamed" standard is arbitrary and capricious.

3) Vacate the "Unnamed" standard.

4) Enjoin Defendants from using the "Unnamed" standard.

5) Declare that Defendants violated Plaintiff's due process rights.

6) Enter a judgment ordering Defendants to apply the limited PSLF waiver changes to Plaintiff at the conclusion of this legal matter.

7) Order such other and further relief, at law or in equity, to which Plaintiff may show himself to be justly entitled.

Dated: October 25, 2022         Respectfully submitted,

/s/ Ramiro Canales
Ramiro Canales (D.C. Bar No. TX0099)
CANALES PLLC
P.O. Box 49106
Austin, Texas 78765
Telephone: (512) 659-3237
Facsimile: (866) 362-3839
email: rcanales@texaslitigation.com

PLAINTIFF